UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08CV-631-H

UNITED STATES OF AMERICA                                                    PLAINTIFF

V.

MALCOLM C. WINSPER and BARBARA L. WINSPER                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

On July 6, 2010, this Court entered a judgment against Defendant, Malcolm Winsper, for his unpaid federal income taxes, plus penalties and interest, in the amount of $901,052.17. The Court also dismissed all claims against Barbara Winsper and ordered the United States to file a separate motion should it seek foreclosure on any jointly owned property. Pursuant to that order, the United States now seeks foreclosure on Mr. Winsper's interest in property located at 410 Belgravia Court, Louisville, Kentucky. Defendant, Barbara Winsper, objects to the foreclosure based on her marital interest in the property.

For the reasons that follow, the Court will need additional advice before deciding about the propriety of foreclosure.

I.

The United States has the power to foreclose on the whole property under 26 U.S.C. § 7403, as long as Barbara Winsper is compensated for her interest in the property. *United States v. Rogers,* 461 U.S. 677, 693-94 (1983) (stating, "we must read the statute [26 U.S.C. §7403] to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it), and the recognition

of third-party interests through the mechanism of judicial valuation and distribution."). While §7403 allows a district court to authorize foreclosure sale, "§7403 does not require a district court to authorize a forced sale under absolutely all circumstances, and some . . . limited room is left in the statute for the exercise of reasoned discretion." *Id.* at 706. The Court required the United States to make this motion precisely so that relevant issues could be raised and debated.

In *Rogers*, the Supreme Court discussed the factors the district court should use to determine whether to exercise their limited discretion to disallow foreclosure on property which implicates ownership interest of an "innocent" third party.[1] The Court articulated four factors:

> (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes;" (2) "whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors," (3) "the likely prejudice to the third party, both in personal dislocation costs and . . . practical undercompensation," and (4) "the relative character and value of the non-liable and liable interests held in the property."

*Id.* at 710-11. The Court will consider each factor in turn.

## II.

The first *Rogers* factor concerns whether the Government's ability to collect past due taxes would be compromised were it denied the ability to foreclose on the entire Belgravia property and reimburse Mrs. Winsper for her marital interest. Few buyers would consider purchase of a property subject to a marital interest. Absent the exercise of the Government's

---

[1] For purposes of our discussion, Mrs. Winsper qualifies as an "innocent" third party because the Government does not have a judgment against her.

power under § 7403, the sale of property and the Government's collection of taxes could be delayed decades until Mrs. Winsper's passing. Such a sale would hinder "the policy inherent in the tax statutes in favor of the prompt and certain collection of delinquent taxes." *Id.* at 694.

On the other hand, the *Rogers* court states that "the possibility of prejudice to the Government can still measured as a matter of degree." *Id.* at 710. In other words, this Court should consider the likely market price for sale of partial interest and sale of the whole property compared to the value of the tax debt. At least one other district court has considered the portion of tax debt likely to be collected given the market value of the property and the existence of other creditors. *See United States v. Reid,* 127 F.Supp.2d 1361, 1382 (S.D. Ga. 2000). This Court agrees that these considerations are reasonable. However, it has no basis upon which to form such a judgment.

Under the second *Rogers* factor, the United States argues that Barbara Winsper should have expected a forced sale because federal tax liens attached to the property under Kentucky law. Furthermore, she was fully cognizant of the possibility of forced sale as she was indebted to the United States for nearly ten years, including when this proceeding began. On the other hand, the *Rogers* court stated that § 7403 proceedings should not factor into deciding a party's expectation of the possibility of forced sale, *Rogers,* 461 U.S. at 710, and Kentucky courts have established a policy against foreclosure on marital residential property interests to satisfy the debt or amend the wrongdoing of one spouse. *See, e.g., United States v. Real Property Located at 5205 Mount Howard Court Louisville, KY,* 755 F. Supp. 169 (W.D. Ky. 1990). Moreover, Barbara Winsper worked to pay off her debt to the United States because she believed that doing so would protect her home from foreclosure. This factor may lean toward Mrs. Winsper.

3

The third *Rogers* factor concerns "personal dislocation costs" and "practical undercompensation" which will prejudice Mrs. Winsper. *Rogers,* 461 U.S. at 711. The Supreme Court suggested that the nature of the market for certain property interests and the use of actuarial statistics to determine likely life expectancy with the resulting compensation for property may both undercompensate a third party. *See Id.* at 704 (stating that "the nature of the market for life estates or the market for rental property may be such that the value of a homestead interest, calculated as some fraction of the total value of a home, would be less than the price demanded by the market for a lifetime's interest in an equivalent home" and "any calculation of the cash value of a homestead interest must of necessity be based on actuarial statistics, and will unavoidable undercompensate persons who end up living longer than the average."). This Court cannot fairly analyze this factor without knowing how Kentucky law would divide the sale proceeds of the Winsper's home.

The last factor concerns the relative interests of the parties. Mr. Winsper has a substantial interest in the property and there is every reason to believe that his assets contributed heavily to its purchase. Mrs. Winsper's interest is also substantial. More importantly, Kentucky law will define the value of both of their interests. *See United States v. Craft,* 535 U.S. 274, 278 (2002) (stating, "[w]e look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation.") (alteration in original) (quoting *Drye v. United States,* 528 U.S. 49, 58 (1999)) (internal quotation marks omitted) and *United States v. Barr,* No. 09-1710, 2010 WL 3023985, at *1 (6th Cir. Aug. 4, 2010) (stating, "In determining property interests for federal tax

law purposes, 'the definition of underlying property interests is left to state law, [and] the consequences that attach to those interests is a matter left to federal law.'") (alteration in original) (quoting *Rogers,* 461 U.S. at 683). Should Mrs. Winsper's interests be worth a large percentage of the property's value, then this factor would weigh in favor of Mrs. Winsper. *See Rogers,* 461 U.S. at 711 (stating that if "that interest is worth 99% of the value of the property, then there might well be virtually no reason to allow the sale to proceed.").

III.

Neither Party has provided information about the approximate market value of the home, the method of distribution of the proceeds of foreclosure sale, and the amount or portion of proceeds of forced sale that is due any other creditor. In *United States v. Barr,* the Sixth Circuit looked to state law to decide what portion of the proceeds of foreclosure sale of tenancy by entireties property is due to each spouse. 2010 WL 3023985, at *1-2. Michigan law did not speak directly to that issue, so the Court looked to how state law treated spousal interests in tenancy by the entireties property in numerous other circumstances. *Id.* Likewise, these Parties should brief the Court on how Kentucky law treats spousal interests in tenancy by the entireties property in different circumstances, such as divorce, consensual sale, and rental proceeds. For instance, *Cowan v. Pleasant* describes one scenario where a tenancy by the entireties is split equally between heirs of the husband and heirs of the wife. 263 S.W.2d 494 (Ky. 1953). The manner in which Kentucky law treats the husband's and wife's interest in an tenancy in the entireties property, along with the market value of the home and the amount due any other creditor, is critical in the evaluation of several of the *Rogers* factors. The following order provides an opportunity for the parties to further advise the Court.

For the reasons stated, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the United States has enforceable tax liens on property commonly known as 410 Belgravia Court, Louisville, Kentucky.

IT IS FURTHER ORDERED that the motion to foreclose is DENIED at this time.

IT IS FURTHER ORDERED that on or before October 22, 2010, both parties shall file memoranda discussing the market value of the home, Kentucky law on the valuation and distribution of tenancy by entireties properties, and the amount or portion of the sale proceeds due to other creditors. Thereafter, the Court will reconsider the government's motion to foreclose.

cc: Counsel of Record